IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MELANIE SLAVENS, as Special Administrator of the Estate of JAMES SLAVENS,<br><br>                Plaintiff,<br><br>v.<br><br>MILLARD COUNTY, et al,<br><br>                Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS<br>(ECF No. 86)<br><br>Case No.  2:11–CV–00568<br><br>Magistrate Judge Evelyn J. Furse |

James Slavens, the original plaintiff in this suit, died in an unrelated car accident. His wife, Melanie Slavens, became the special administrator of his estate and substituted as plaintiff in this case (the "Estate"). (ECF No. 37.) The Estate brings this action against Millard County, Richard Waddingham, Daron P. Smith, Bart A. Whatcott, and Craig P. Greathouse (collectively the "County") alleging causes of action under 42 U.S.C. section 1983 for violations of the equal protection and due process clauses, breach of contract, including breach of the covenant of good faith and fair dealing, and violation of the Utah Open and Public Meetings Act. The County moved this Court under Federal Rule of Civil Procedure 12(c) to dismiss the Estate's claims for deprivation of constitutional rights and violation of the Utah Open and Public Meeting Act. (ECF No. 86.) Finding that a claim under the Utah Open and Public Meetings Act ("UOPMA") does not survive death, this Court dismissed the Estate's UOPMA claims by separate Order. (ECF No. 114.)

The Court[1] read the Motions and Memoranda submitted for and against the County's Motion for Judgment on the Pleadings and heard oral argument on September 9, 2013. The Court GRANTS IN PART and DENIES IN PART that Motion.

## LEGAL STANDARD

"Where a party moves to dismiss pursuant to Fed. R. Civ. P. 12(c), [courts] will review the judgment on the pleadings under the standard of review applicable to a Rule 12(b)(6) motion to dismiss." *Bishop v. Fed. Intermediate Credit Bank of Wichita*, 908 F.2d 658, 663 (10th Cir. 1990). "To withstand a motion to dismiss, a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Kan. Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). While "'a court must accept as true all of the allegations contained in a complaint,'" this rule does not apply to legal conclusions. *Id.* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). "[A] plaintiff must offer specific factual allegations to support each claim." *Id.* (citation omitted). A complaint survives only if it "states a plausible claim for relief." *Id.* (citation omitted).

"Generally, a court considers only the contents of the complaint when ruling on a 12(b)(6) motion." *Berneike v. CitiMortgage, Inc*., 708 F.3d 1141, 1146 (10th Cir. 2013). But a court may consider "documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes its authenticity; and 'matters of which a court may take judicial notice.'" *Id.* (internal quotation marks omitted) (citing *Gee v. Pacheco,* 627 F.3d 1178, 1186 (10th Cir. 2010)).

---

[1] The parties consented to the exercise of jurisdiction by the undersigned Magistrate Judge under 28 U.S.C. section 636(c). (ECF No. 8.)

-2-

**DISCUSSION**

**I. Section 1983 Claims Survive Death**

The Estate claims a mutual expectation existed between Mr. Slavens and the County that their longstanding contractual relationship would continue and alleges that the County, acting under color of state law, deprived Mr. Slavens of that right or privilege in violation of 42 U.S.C. section 1983. The County argues that the Estate's section 1983 claim does not survive Mr. Slavens's death.

Section 1983 states in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." To establish a claim under section 1983, a plaintiff must allege that a defendant acted under color of state law to deprive the plaintiff of a right, privilege, or immunity secured by the Constitution or the laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988).

42 U.S.C. section 1988 governs survival of section 1983 claims because the federal statute is moot on the matter. Hence, if state law does not conflict with the federal policy behind section 1983, the law of the state in which the action arises will govern survival of a section 1983 claim. *Robertson v. Wegmann*, 436 U.S. 584, 590 (1978). "At common law survivable actions are those in which the wrong complained of affects primarily property and property rights, and in which any injury to the person is incidental, while nonsurvivable actions are those in which the injury complained of is to the person and any effect on property or property rights is incidental." 1 Am. Jur. 2d *Abatement, Survival, and Revival* § 51 (2013). Generally, "purely personal torts

do not survive in the absence of statutory provision." *Id.* Thus, barring statutory language that provides for their survival, non-property claims cannot survive death. Utah Code section 78B-3-107(1)(a) provides that "[a] cause of action arising out of personal injury to a person, or death caused by the wrongful act or negligence of another, does not abate upon the death of the wrongdoer or the injured person." Thus, based on the reasoning set forth in *Robertson*, the Court finds that Utah law does not conflict with the federal policy behind section 1983 because some torts can survive death in Utah. *See,* 436 U.S. at 594.

In applying Utah law, the Court must decide whether Utah Code section 78B-3-107(1)(a) encompasses a section 1983 claim. The Court finds persuasive the Supreme Court's reasoning in *Wilson v. Garcia*, 471 U.S. 261 (1985), in the context of statute of limitations issues, that section 1983 claims are best characterized as personal injury actions.[2] Specifically,

> If the choice of the statute of limitations were to depend upon the particular facts or the precise legal theory of each claim, counsel could almost always argue, with considerable force, that two or more periods of limitations should apply to each § 1983 claim. Moreover, under such an approach different statutes of limitations would be applied to the various § 1983 claims arising in the same State, and multiple periods of limitations would often apply to the same case. There is no reason to believe that Congress would have sanctioned this interpretation of its statute. . . . We conclude that the state is fairly construed as a directive to select, in each State, the one most appropriate statute of limitations for all § 1983 claims. . . . After exhaustively reviewing the different ways that § 1983 claims have been characterized in every Federal Circuit, the Court of Appeals concluded that the tort action for the recovery of damages for personal injuries is the best alternative available.

---

[2] Alternatively, if the Court attempted to compare this particular relief sought in this section 1983 claim to an analogous state law claim, as the court in *Allred v. Solaray, Inc.*, 971 F. Supp. 1394, 1397-99 (D. Utah 1997) (applying Utah's survival statute to an ADA claim) did, the most analogous relief would be to a cause of action on contract. An action on a contract survives death under Utah law. *See Estate of Berkemeir v. Hartford Ins. Co.*, 2004 UT 104, ¶¶ 5-18 ,106 P.3d 700, 702-05; *see also, Pearson v. Anderburg*, 80 P. 307, 308 (1905) (permitting cause of action by administratrix for benefits of a contract earned during the life of the deceased).

*Wilson*, 471 U.S. at 273-76 (footnotes omitted).

Given that characterization, Utah's survival statute preserves the Estate's section 1983 claim as a personal injury action. Accordingly, the section 1983 claims survive Mr. Slavens's death.

## II. Official Capacity

The Estate brings its first cause of action for deprivation of Constitutional rights against all Defendants, including the individual Defendants in their official capacities.

Yet "[a] suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same." *Watson v. City of Kan. City*, 857 F.2d 690, 695 (10th Cir. 1988) (citations omitted); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . . As such, it is no different from a suit against the State itself."). The Estate's first cause of action against the individual Defendants in their official capacities duplicates of the same cause of action against the County. Accordingly, the Court dismisses the Estate's first cause of action against the individual Defendants in their official capacities.

## III. City Policy or Custom

Millard County argues that the Estate's constitutional deprivation cause of action fails for want of allegations that Millard County terminated Mr. Slavens's contract pursuant to a municipal policy or custom. (*See* ECF No. 86 at 12.) But "[o]fficial municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, __ U.S. __, 131 S. Ct. 1350, 1359 (2011) (citations omitted). Here, the Millard County Commission

itself held the opened and closed meetings and terminated Mr. Slavens's contract. Thus, these actions constitute official municipal policy for which Millard County has responsibility responsible. *See id.*(noting that "These are 'action[s] for which the municipality is actually responsible.'" (citation omitted)).

### IV. Equal Protection

Unlike a "traditional" equal protection claim where a plaintiff alleges membership in a particular class, the Estate proceeds on the "class-of-one" theory recognized by the Supreme Court in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). A successful class-of-one claim requires the plaintiff to "first establish that others, 'similarly situated in every material respect' were treated differently." *Kan. Penn Gaming*, 656 F.3d at 1216 (citation omitted). "A plaintiff must then show this difference in treatment was without rational basis, that is, the government action was 'irrational and abusive,' and 'wholly unrelated to any legitimate state activity.'" *Id.* (citations omitted). "This standard is objective—if there is a reasonable justification for the challenged action, [the court] do[es] not inquire into the government actor's actual motivations." *Id.* (citation omitted).

Because class-of-one equal protection claims "'could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors,'" the Tenth Circuit has recognized that plaintiffs bear a substantial burden to "demonstrate others 'similarly situated in all material respects' were treated differently and that there is no objectively reasonable basis for the defendant's action." *Id.* at 1216–17 (citations omitted). The Estate has not met this heavy burden.

The only similarly situated person the Estate alleges was treated differently by the County is Millard County Attorney Richard Waddingham. However, the County Attorney is an

elected position. As a result, the County Attorney can only be terminated by following procedures provided for by statute. Because Mr. Waddingham is an elected official in contrast to Mr. Slavens, who was an independent contractor, the two are not similarly situated as a matter of law.[3] The Amended Complaint contains no allegations regarding the deputy county attorneys discussed at oral argument. Even given the issues raised at oral argument, they do not provide a point of comparison because the Estate did not allege the deputies engaged in undesirable behavior of any kind. Thus, they are not similarly situated. Because the Estate has not sufficiently alleged other similarly situated individuals whom Defendants treated differently, her equal protection claim must fail.

## V. Due Process

### A. Substantive Due Process

In its first cause of action for deprivation of constitutional rights, the Estate asserts violations of Mr. Slavens's substantive and procedural due process rights. However, in its opposition to the County's Motion for Judgment on the Pleadings, the Estate correctly concedes it cannot state a claim for substantive due process. (ECF No. 91. at 25.) Accordingly, the Court dismisses the Estate's substantive due process claim.

### B. Procedural Due Process

---

[3] During oral argument, Ms. Slavens's counsel asked this Court to infer that Mr. Slavens, although he had a contract with the County, was in fact a public employee. To the extent Plaintiff asks this Court to make that inference, her class-of-one equal protection claim fails as a matter of law. The Supreme Court has unequivocally held the class-of-one equal protection theory "does not apply in the public employment context." *Engquist v. Or. Dep't of Agr.*, 553 U.S. 591, 598 (2008). "A public employee-turned-plaintiff must be a member of an identifiable class to bring an equal protection claim." *Pignanelli v. Pueblo Sch. Dist. No. 60*, 540 F.3d 1213, 1220 (10th Cir. 2008) (citing *Engquist*, 553 U.S. at 598).

To state a procedural due process claim under section 1983, "'a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectible property interest.'" *Nichols v. Bd. of Cnty. Comm'rs*, 506 F.3d 962, 969 (10th Cir. 2007) (quoting *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000)). "The Supreme Court defines 'property' in the context of the Fourteenth Amendment's Due Process Clause as a 'legitimate claim of entitlement' to some benefit." *Hyde Park*, 226 F.3d at 1210 (citation omitted). "An abstract need for, or unilateral expectation of, a benefit does not constitute 'property.' Due Process is not an end in itself. Rather, the constitutional purpose of Due Process 'is to protect a substantive interest to which . . . [a party] has a legitimate claim of entitlement.'" *Id.* (internal citations omitted). "'[C]onstitutionally protected property interests are created and defined by statute, ordinance, contract, implied contract and rules and understandings developed by state officials.'" *Nichols*, 506 F.3d at 970 (quoting *Hulen v. Yates*, 322 F.3d 1229, 1240 (10th Cir. 2003)).

Taking the allegation of the Amended Complaint as true, the facts are as follows. Mr. Slavens held a series of contracts with Millard County dating to 1997 for the provision of legal defense services to indigent defendants. The contracts generally covered a period of approximately two years and generally contained a renewal provision granting Mr. Slavens the first opportunity to negotiate with Millard County for indigent legal defense services. The operative contract, executed on December 30, 2008, covered the two-year period from January 1, 2009, through December 31, 2011. Paragraph 10 of the contract set forth the following grounds for terminating the contract:

    A.    Failure of Attorney to perform any condition as agreed herein. Such failure shall allow County to terminate this agreement with 30 days' written notice.

    B.    Any formal reprimand or suspension from the practice of law imposed upon Attorney by the Utah State Bar. Such reprimand or suspension shall allow County to terminate this agreement with 30 days' written notice.

    C.    An affidavit signed by a District Court Judge stating that Attorney or any of his subcontractors have failed to provide minimum standards for defense of indigent defendants pursuant to Title 77, Chapter 32 of the Utah Code Annotated. Such affidavit shall allow the County to terminate this agreement with 30 days written notice.

    D.    A majority vote of the Millard County Commissioners to terminate the contract because of just cause with 90 days' written notice.

    E.    Attorney may terminate this agreement by giving 90 days' written notice to County.

(ECF No. 85-1.) The contract contained the following "review" provision: "During the first Commission meeting in August 2011 the County will review the Attorney's performance. If the County finds the review satisfactory, it will offer Attorney the first right to negotiate a new public defender contract." (*Id*.) In July 2010, Millard County terminated its contract with Mr. Slavens at a meeting of the Millard County Commission. Mr. Slavens attended the meeting but did not have prior notice that the Commissioners intended to discuss termination of his contract at the meeting. The Commissioners went into closed session for part of the meeting. They invited Mr. Slavens to join them, which he did. Mr. Slavens asked to have his attorney accompany him to the closed meeting and speak on his behalf, but the Commission denied this request.

    The Estate argues the series of contracts along with the renewal provisions suffice to create a legitimate claim to entitlement. Among other things, the County points out that the contract covered a definite term and that Mr. Slavens's unilateral belief as to the perpetual nature of the contracts cannot give rise to a protectable property interest.

    The Court agrees with the County that Mr. Slavens did not have a property interest in a perpetual contract. However, Mr. Slavens has sufficiently pled a property interest in his contract for the length of the contract with Millard County and in his role as Millard County public defender. "It is well settled that a protected property interest arises where a government benefit

may be withdrawn only for cause." *Jeffries v. Georgia Residential Fin. Auth.*, 678 F.2d 919, 925 (11th Cir. 1982) (citing *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 11 (1978); *Arnett v. Kennedy*, 416 U.S. 134, 151 (1974); *Glenn v. Newman*, 614 F.2d 467, 471 (5th Cir. 1980)).  In *Arnett v. Kennedy*, 416 U.S. 134 (1974), the Supreme Court "concluded that because the employee could only be discharged for cause, he had a property interest which was entitled to constitutional protection."  *Bishop v. Wood*, 426 U.S. 341, 347 n.8 (1976).  In *Jeffries,* 678 F.2d at 927, the Eleventh Circuit determined that public housing tenants had a property interest in their leases because the leases could only be terminated mid-lease for cause.

While not a public employee, Mr. Slavens had a contract to perform Public Defender services for Millard County that Millard County could only terminate mid-term for "just cause". Millard County did terminate Mr. Slavens's contract mid-term.  Under the alleged facts and given the standard this Court applies in deciding a motion for judgment on the pleadings, the Court finds Mr. Slavens has stated a claim for a protectable property interest in his contract and position with Millard County for provision of indigent legal defense services.

The County argues that no property interest "protected by due process exists where a contractor claims that s/he has been deprived of future payment under a contract, and could seek redress through an action for breach of contract."  (ECF No. 97 at 2 (citing *Lujan v. G. & G. Fire Sprinklers, Inc.*, 532 U.S. 189, 195-97 (2001).)  While *Lujan* does stand for that proposition, these allegations do not go simply to the right to collect money due for service performed. Rather, the County terminated Mr. Slavens's right to perform the contract and thus earn the money.  The right to serve as the public defender for a county is both an honor and, in this case, a contract.  Mr. Slavens lost both, not just a sum due.  For these reasons, the Court finds the Estate has sufficiently stated a claim for due process.

### V. 28 U.S.C. section 1292(b)

At the final pretrial conference held on September 11, 2013, counsel for the County asked this Court to certify its Order on the County's Motion for Judgment on the Pleadings for interlocutory appeal under 28 U.S.C. section 1292(b). Section 1292(b) provides in pertinent part:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b). The Court finds while opinions may differ over some of the rulings in this Order, immediate appeal will not materially advance the ultimate termination of the litigation, given the remaining contract claims arising from the same set of facts. Therefore, the Court declines to certify the order for interlocutory appeal under section 1292(b).

### **CONCLUSION**

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion for Judgment on the Pleadings (ECF No. 86).

DATED this 20th day of September, 2013.

BY THE COURT:

_Evelyn J. Furse_
Evelyn J. Furse
United States Magistrate Judge
