# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MELANIE SLAVENS, as Special Administrator of the Estate of JAMES SLAVENS,<br><br>Plaintiff,<br><br>v.<br><br>MILLARD COUNTY, et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO RECONSIDER (ECF No. 188)**<br><br>Case No. 2:11–CV–00568–EJF<br><br>Magistrate Judge Evelyn J. Furse |

The Court invited Defendant Millard County to file a motion to reconsider this Court's Order denying Millard County's Motion to Dismiss, noting the Court may find helpful additional briefing regarding the city-policy-or-custom issue related to the Estate's due process claim. On September 24, 2013, Millard County moved this Court to reconsider that Order. (ECF No. 188.) For the reasons set forth below, the Court DENIES that Motion.

At the outset, the Court corrects some inaccuracies contained in Defendant's Motion. First, Defendant states this Court "mistakenly considered the motion under Rule 12(b), which requires a motion to dismiss for failure to state a claim to be filed before a responsive pleading, rather than under Rules 12(c) and 12(h), which permit the same motion to be filed after the responsive pleading or even at trial." (Def.'s Mem. Supp. 2, ECF No. 188.) While the Court notes Defendant did cite Rule 12(c) in the body of its motion, the Court made no mistake in denying Defendant's motion as untimely.[1] Rule 12(c) provides that a motion for judgment on

---

[1] Nowhere in the Motion did Defendant cite to Rule 12(h).

-1-

the pleadings may be filed after the pleadings are closed, as Defendant correctly notes. Fed. R. Civ. P. 12(c). But Defendant ignores Rule 12(c)'s mandate that such a motion be brought "early enough not to delay trial." *Id.* A Motion for Judgment on the Pleadings filed on the Friday before the Monday start of a trial would delay trial. Thus the Court denied the Motion. While Rule 12(h)(2) allows a defendant to raise the defense of failure to state a claim by a motion under Rule 12(c) or at trial, Defendant did not cite Rule 12(h)(2) in its original Motion. Rule 12(h)(2)(C) permits defendants to raise the failure-to-state-a-claim defense at trial. While that rule permits Defendant to do just that, Defendant brought this Motion the Friday before the Monday start of trial, with no citation to Rule 12(h)(2)(C).

Finally, the Court notes it already ruled on the issue Defendant raised in the Motion in its original Order denying Defendants' first Motion for Judgment on the Pleadings. Accordingly, the proper avenue to challenge that ruling is a motion to reconsider—not an additional 12(b)(6) motion. Because Defendant now brings the appropriate motion to reconsider under Rule 54(b), the Court will consider Defendant's arguments.

**I**

In reaching the decision below, the Court relies upon the following allegations in the Estate's Amended Complaint. The Court has already set forth the standard it applies in deciding a motion brought under Rule 12(b)(6) or 12(c). (*See* ECF No. 172.) Taking the factual allegations of the Complaint as true, the Amended Complaint alleges the following facts the Court finds sufficient to state a claim.[2]

---

[2] Because this Motion only challenges that the Amended Complaint fails to identify a city policy or custom that violated Mr. Slavens's due process rights, the Court limits its recitation of facts to those relevant to this issue.

Millard County, Richard Waddingham, Daron Smith, Bart Whatcott, and Craig Greathouse acted under color of the statutes, customs, ordinances, guidelines, rules and regulations as promulgated by the United States, Sate of Utah and/or Millard County. (Am. Compl. ¶ 9, ECF No. 85.) Apart from a phone call requesting Mr. Slavens's presence at the July 6, 2010, Millard County Commission meeting, Mr. Slavens received no other notice, including any indication of any accusations or charges against him, or that Defendants were considering the possibility of terminating his contract. (*Id.* ¶¶ 32–33; *see also* ¶¶ 41–43, 45–47.) Nor did Mr. Slavens receive notice that Defendants intended to discuss their concerns with him about the contract in a closed, executive session. (*Id.* ¶ 34.)

At the Millard County Commission meeting, Mr. Slavens cited due process requirements and requested that his due process rights be honored and that he "be afforded a legitimate due process hearing." (*Id.* ¶ 38.) In response, Defendant Waddingham[3] advised the other Defendants that Mr. Slavens was not entitled to legal representation, due process, or a due process hearing. (*Id.* ¶ 39.) Relying upon Mr. Waddingham's statement, Defendants denied Mr. Slavens's requests and advised him they took the position he had no entitlement to due process or a due process hearing. (*Id.*) After discussing due process concerns, including the lack of reasonable notice and reasonable opportunity to prepare, the parties discussed the terms of the contract. (*Id.* ¶ 40.) Defendants stated they had concerns about various terms and provisions of the contract, but did not allege that Mr. Slavens had actually breached any term of the contract. (*Id.*) Following the closed meeting, the Defendants reconvened in an open and public session and voted unanimously to terminate Mr. Slavens's contract. (*Id.* ¶ 54.) Defendants then sent Mr. Slavens a termination letter dated July 9, 2010, providing him with final, written notice of his

---

[3] Richard Waddingham, along with the other individual defendants, has since been dismissed from this action.

public defender contract with Millard County. (*Id.* ¶ 55.) That letter stated the Commission terminated the contract for "just cause" and included Defendants' conclusion that Mr. Slavens's alleged actions "'reflect negatively on the County and justify the County Commission's decision to terminate your contract.'" (*Id.* ¶ 56.)

## II

In support of its motion to reconsider, Millard County argues this Court must dismiss the Estate's due process claim because the Estate has failed to identify a city policy or custom that violated Mr. Slavens's due process rights. The Court disagrees.

In *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court overturned its holding in *Monroe v. Pape*, 365 U.S. 167 (1961), which provided local government units immunity from actions under section 1983. Municipalities, however, typically govern through human agents. *E.g.*, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (Brennan, J., concurring). Because municipalities so often act through human agents, *Monell* set forth an "official policy" requirement "intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original). Thus, when a plaintiff seeks to hold a municipality liable for the acts of its agents or employees, she must show an official policy motivated the employee or agent's actions. *See Monell*, 436 U.S. at 694.

Having clarified that the "official policy" requirement attaches where a plaintiff seeks to hold a municipality vicariously liable, "it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur*, 475 U.S. at 480. "No one has ever doubted, for instance, that a municipality may be liable under §

1983 for a single decision by its properly constituted legislative body—whether or not that body had taken similar action in the past or intended to do so in the future—because even a single decision by such a body unquestionably constitutes an act of official government policy." *Id.* In support of this unequivocal declaration, Justice Brennan pointed to two representative cases: *Owen v. City of Independence*, 445 U.S. 622 (1980), where the city council passed a resolution firing the plaintiff without a pretermination hearing, and *Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981), where the city council canceled a license permitting a concert because of a dispute over the performance's content. *See Pembaur*, 475 U.S. at 480. Two years later, in *Praprotnik*, Justice Brennan again identified *Owens* and *Newport* for the same proposition: "a single decision of a city's properly constituted legislative body is a municipal act capable of subjecting the city to liability." *Praprotnik*, 485 U.S. at 138 (Brennan, J., concurring).

The Millard County Commission is Millard County's properly constituted legislative body. Utah permits its counties to select from a number of forms of county government. *See* Utah Code Ann. § 17-52-102. Unless a county adopts another form of government, Utah law requires its counties to operate under the county commission form of government. Utah Code Ann. § 17-52-102(2). Section 17-52-501 of the Utah Code provides for the county commission form of government, under which the county commission—comprised of three members—is both the county legislative body and the county executive. Millard County operates under this form of county government. *See* Millard County, Utah Code § 1-5-6. Under the Millard County Code, the Board of County Commissioners (the "Commission") is the legislative division of the county government and is the only entity vested with authority to make any contract to which Millard County is a party. Millard County Code § 1-5-6(A)–(B).

The Estate alleges the Commission terminated its public defender contract with Mr. Slavens as an official act in an open session. Where, as here, "the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood," regardless of whether the action is to be taken only once or repeatedly. *Pembaur*, 475 U.S. at 481. On this basis, the Court finds that Millard County may have liability for a Constitutional violation resulting from the termination of the Millard County public defender contract.

### III

This Court's decision would not change under a theory of indirect liability. Courts have firmly established that a municipality may have direct liability for a single act. *Pembaur*, 475 U.S. at 480. However, a municipality may have direct liability for a single act only where the actor possessed final policymaking authority with respect to that act. *Id.* at 481; *Praprotnik*, 485 U.S. at 123. "[T]he identification of policymaking officials is a question of state law." *Praprotnik*, 485 U.S. at 124 (citing *Pembaur*, 475 U.S. at 483). Thus, the Court must apply state law to identify the relevant policymaking official. *See Milligan-Hitt v. Bd. of Trustees of Sheridan Cnty. Sch. Dist. No. 2*, 523 F.3d 1219, 1224 (10th Cir. 2008) ("the question of . . . final policymaking authority is a question of law, which should not have gone to the jury").

In *Hall v. Marion School District Number 2*, 31 F. 3d 183 (4th Cir. 1994), the plaintiff special education teacher alleged the school district terminated her employment in retaliation for her exercise of her right to free speech. 31 F. 3d at 190. Specifically, the district superintendent schemed over a period of time to terminate the plaintiff's employment with the district because plaintiff had published letters to the editor in the local newspaper critical of certain school board members. *Id.* 186–90. Eventually, the school board notified plaintiff that due to concerns about

her attitude and performance, the board was considering terminating her employment. *Id.* at 189–90. After a three-night hearing, the school board voted to dismiss plaintiff as a teacher. *Id.* at 190. The plaintiff then filed suit against the school district under section 1983, based on the retaliatory actions of the superintendent and school board. *Id.* The *Hall* court found that under applicable state law, the school board acted as the final policymaker with regard to the employment and discharge of teachers. *Id.* at 196. Applying *Pembaur* and *Praprotnik* the Fourth Circuit held that because the school board had final policymaking authority in this area of the school district's business, the school district could have liability for the act of the school board in dismissing the plaintiff. *Id.* at 196.

The actor here is the Millard County Board of County Commissioners. The Court looks to state law to determine whether the Commission had final policymaking authority with respect to contracts such as that between Mr. Slavens and the County for the provision of indigent legal defense services. A review of the relevant state law, as set forth above, clearly shows the Millard County Board of County Commissioners possessed final policymaking authority with respect to the contract at issue. The Millard County Code sets forth the powers of the Board of County Commissioners. Millard County Code section 1-5-6 provides in pertinent part:

> A. Generally: The board of county commissioners shall be the legislative division of county government. It may supervise the official conduct of all county and department officers, assuring that they faithfully perform their duties. It may also direct prosecutions for delinquencies and, when necessary, require county officers to renew their official bonds, make reports, and present their books and accounts for inspection. The commissioners shall enact regulations and ordinances as necessary and shall have such other powers and duties as are prescribed by law. (1988 Code § 2.01.040)
>
> B. Contract Authorization: The commissioners shall make or authorize the making of all contracts to which the county may be a party. All contracts, in order to be binding on the county, shall be reduced to writing and approved by the commissioners. The commissioners may expressly authorize a contract by ordinance or resolution. (1988 Code § 2.01.090)

Millard County Code § 1-5-6. Thus, the relevant state law clearly establishes the Commission as the final policymaker with respect to all contracts to which the County is a party, including the contract at issue. The Commission terminated its contract with Mr. Slavens as an official act in an open session pursuant to a clause of the contract requiring a majority vote of the County Commission. Thus, because the Board of County Commissioners has final policymaking authority with respect to contracts like the one at issue, the County may have liability for any Constitutional violations caused by the Commission's termination of Mr. Slavens's contract without due process as alleged in the Complaint.

DATED this 26th day of September, 2013.

BY THE COURT:

_____
Evelyn J. Furse
United States Magistrate Judge